## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 49487

TCR, LLC, a Wyoming limited liability corporation,

    Plaintiff-Respondent-Cross Appellant,

v.

TETON COUNTY, a political subdivision of the State of Idaho,

    Defendant-Appellant-Cross Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2024 Term

Opinion Filed: November 19, 2024

Melanie Gagnepain, Clerk

**SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION, DATED JANUARY 11, 2024, IS HEREBY WITHDRAWN**

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Teton County. Steven W. Boyce, District Judge.

The decisions of the district court are <u>affirmed in part</u>, <u>reversed in part</u>, and <u>remanded for further proceedings</u>.

Hall Angell & Associates, LLP, Idaho Falls, for Defendant-Appellant-Cross Respondent, Teton County. Blake G. Hall argued.

Beard St. Clair Gaffney, Idaho Falls, for Plaintiff-Respondent-Cross Appellant, TCR, LLC. Jeffrey Brunson argued.

---

BEVAN, Chief Justice.

This case involves a dispute regarding a planned unit development ("PUD") in Teton County. TCR, LLC ("TCR") filed suit against Teton County alleging breach of contract and seeking declaratory and injunctive relief after Teton County refused to record a Condominium Plat for property TCR owned within the PUD. TCR later moved for summary judgment on its declaratory and injunctive relief claim, which the district court granted after concluding the lot had already been approved for development of condominium units. The district court ordered the County to record the Condominium Plat pursuant to the Idaho Condominium Property Act. The district court also granted the County's motion for summary judgment on the breach of contract claim after concluding the County had not breached a settlement agreement reached in 1996 with

1

TCR's predecessor in interest, the Teton Creek Resort. For the reasons below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The PUD "was originally platted and recorded in the records of Teton County . . . in 1995." The Teton Creek Resort, LLC, previously owned the land currently owned by TCR, which is the subject of the PUD. Harry Statter, a current member of TCR, testified that TCR purchased the property previously owned by the Teton Creek Resort in 2014 from a bankruptcy trustee.[1]

The Teton County Planning and Zoning Commission ("the Planning and Zoning Commission") approved Teton Creek Resort's PUD in 1995, with the requirement that Teton Creek Resort satisfy seventeen conditions. One of those conditions is listed on the Planning and Zoning Commission notes from October 1995 as "6. FINAL SITE PLAN: Submitted as requested; CONDITION MET." (Capitalization and underlining in original.) In this appeal, the existence and applicability of the referenced site plan are disputed.

The Planning and Zoning Commission met again the following month and voted "to accept the minutes and the findings of fact on Teton Creek Resort from the October 2, 1995[,] P&Z Meeting." The next step was for the Teton Creek Resort Final Plat to be reviewed by the Board, which voted to approve the Teton Creek Resort Final Plat (which will be referred to as "the PUD Plat").[2] The Board adopted the findings and conclusions made by the Planning and Zoning Commission without making any additional findings beyond those made by the Planning and Zoning Commission. The Chair of the Board then signed the PUD Plat.

The PUD Plat has been amended several times since 1995. In 2018 and 2019, after TCR acquired the property, it filed multiple requests for amendments to the PUD Plat with the County. The district court summarized these amendments as follows:

> With respect to the recent plat amendments to [Lot 12B], the Planning and
> Zoning Administration for Teton County (hereinafter "P&Z") prepared staff notes

---

[1] It is uncertain who owned the property when TCR purchased it. However, Statter testified that he "believe[d] the owners [at the time TCR purchased the property] were the bankruptcy estates of Ulrich Felix[,] Anton Engler and Private Commercial Office, Inc."

[2] This case primarily concerns the actions of the Board. However, TCR's Complaint named Teton County as a defendant, and Teton County is the name used by the Appellant in this appeal. As a result, we refer to these arguments on appeal as being made by the County. When it is necessary to differentiate between the two, "the Board" will be used to refer to specific actions taken by the Board. "The County" will be used to refer to Teton County's arguments on appeal as well as actions taken by members of staff working for Teton County when those individuals cannot be identified with specificity from the record.

to the [Board] regarding the proposed amendments to assist the [Board] in [its] decision on the proposed amendments. The P&Z notes dated June 9, 2018[,] indicate to the [Board] that TCR intended to place individual condominium units on [Lot 12B]. Similarly, the P&Z notes for the [Board's] public meeting on December 10, 2018, indicate that TCR intended to place individual condominiums on the Lot. Finally, upon approval of the final insignificant plat amendment to [Lot 12B], the P&Z notes for the [Board's] meeting on February 25, 2019[,] further indicate that TCR intended to place individual condominium units on [Lot 12B].

(Internal citations omitted. Words and punctuation in brackets added.) In other words, over the course of the meetings between 2018 and 2019, the Board twice approved amendments to the PUD Plat which authorized TCR to build sixteen standalone condominiums on Lot 12B.

These plat amendments were characterized at the time the amendments were approved by the Teton County Planning Administrator ("the Planning Administrator") as "insignificant" as that term was defined in the County's code. The County's code defined an "insignificant" plat amendment as a change that "ha[s] minimal direct impact on the immediate neighborhood, general vicinity of the subdivision or overall community." Teton County Code § 9-7-1(B.2)(a) (2013). The Planning Administrator could also designate a plat amendment application as "substantial" if the proposed changes were perceived by him as such. However, none of the PUD Plat amendments in 2018 or 2019 were characterized by the Planning Administrator as "substantial."

After these amendments had been approved by the Board, TCR had a condominium plat ("the Condominium Plat") prepared by Forsgren Associates, Inc. ("Forsgren Associates"), an engineering firm. The Condominium Plat included plans for the sixteen, previously approved, standalone condominium units. TCR submitted the Condominium Plat to the County for acceptance and recordation. The Condominium Plat was signed by all necessary parties, including the Chair of the Board, Cindy Riegel. Harry Statter, one of the owners of TCR,[3] testified that Gary Anderson, the Teton County Planning Administrator, later advised him that the Condominium Plat would not be recorded. As Statter testified:

Gary Armstrong told me that Cindy Riegel, Chairperson for the Teton County Commissioners (who had also signed the Condominium Plat), instructed him to not record the Plat. Gary also said that Cindy Reigel instructed him to not allow me to remove the Condominium Plat from the Planning Department.

. . . .

_____

[3] The exact ownership structure of TCR is not included in the record. It appears from the record that Statter was the only owner who dealt with the County with respect to TCR's attempts to develop Lot 12B.

3

When I was informed that the County refused to record the Condominium Plat[,] I responded that I followed the condominium statute, that I did everything the County required of me, and that I was entitled to 16 condominium units on Lot 12B. . . .

A few weeks later[,] I was informed that, in order for the Condominium Plat for Lot 12B to be recorded, I needed to go through a plat amendment process under [Teton County Code section] 9-7-1.

In her declaration submitted to the district court, Riegel stated:

3. . . . After I signed the proposed condominium plat, I recognized it was done by mistake because I did not have the authority to sign on behalf of the Board . . . without the approval of the [B]oard.

4. The Board of Commissioners acts as a governing body, and I am not authorized to act on my own without other board members. Because I lacked the authority to sign on behalf of the [B]oard, I requested of staff that my signature be redacted or blacked out and then requested that [TCR's] proposed [C]ondominium [P]lat be made an agenda item to be addressed by the Board of Commissioners at its meeting on August 18, 2020.

In a report prepared by County Development staff in anticipation of a Board meeting in August 2020, a representative of Forsgren Associates is quoted as follows: "Teton County [C]ode has no provision, policy, or regulation related to filing condominium plats. As such, we are guided by state statute. . . . The previously approved plat (and subsequent amendments) allows for up to 16 [standalone] units to be constructed on Lot 12B[.]" At the August 2020 meeting, the Board voted to table the discussion of Lot 12B until it had received "an opinion from the County Attorney Billie Siddoway regarding the proposed plat." (Bracketed language and punctuation added.)

On August 27, 2020, Siddoway emailed TCR's counsel to advise him that the County would not approve the Condominium Plat because TCR did not submit any final site plans, architectural designs or landscape drawings to the County for review and that the submission of those documents was "a condition precedent to receiving approval[.]" The next month, Armstrong sent an email to Herbert Heimerl, counsel for TCR, which stated:

I have been instructed to advise you that the County requests that your client prepare a plat amendment application for the condo plat on [L]ot 12B in Teton Creek Resort. Upon receipt of the plat amendment, it will be determined if it will be considered as an insignificant plat amendment or substantial plat amendment. Once we receive the application, we will schedule it for [the] next available date and appropriate meeting.

TCR maintains that, following this exchange, it submitted its application only "*under protest* because the Condominium Plat complied with, and did not amend, the recorded and approved PUD

4

Plat." After reviewing TCR's application, the Planning Administrator classified the Condominium Plat as insignificant because the "previous approval for Lot 12B includes 16 [standalone] condominium units." In October 2020, the Board denied TCR's application, finding that the Condominium Plat proposed a "substantial" amendment to Lot 12B because it proposed sixteen standalone condominium units while the original site plan submitted in 1995 had proposed sixteen condominiums contained within two multiunit buildings. The Board then instructed TCR it needed to resubmit its application for the Condominium Plat as a "substantial" plat amendment.

## B. Procedural Background

### 1. The 1996 Settlement Agreement

Although TCR first filed suit in November 2020, litigation surrounding the development of the Teton Creek Resort area began much earlier. Relevant here, several local activist groups had apparently attempted to stifle the development of the Teton Creek Resort and had brought a lawsuit to prevent the development.[4] This lawsuit culminated with a settlement agreement ("the Settlement Agreement") in 1996.

The Settlement Agreement identified several responsibilities of the parties involved. Relevant here are the following provisions:

> This Mutual Release and Settlement Agreement . . . is entered . . . among: Teton Creek Resort, LLC, a Wyoming limited liability company ("[Teton Creek Resort]"); The Ad Hoc Committee Against Teton Creek Resort ("Ad Hoc"); Citizens For Teton Valley ("CTV"); The Community Association for Responsible Planning ("CARP")[;] and the Board of County Commissioners for Teton County, Idaho ("Board"), (sometimes collectively referred to as "the Parties").

> **RECITALS:**

> . . . .

> B. [("the Recitals Provision")] The Parties have decided and agreed that, to avoid further expense and inconvenience, the uncertainty of litigation, and to remove obstacles to the construction of the Teton Creek Resort Project, it is in their respective best interests to enter into this Settlement Agreement and finally and forever settle and resolve all outstanding claims and differences among them, involved in, but not limited to the [Teton Creek Resort] Litigations I, II, and III (the "Disputes") by way of compromise and without any admission of liability by any party in accordance with the terms set forth below.

---

[4] The district court sometimes refers to the previous owner of the property, Teton Creek Resort, LLC, by the acronym "TCR." The district court also sometimes refers to the current owner of the property, TCR, LLC, by the same acronym "TCR" even though it is referring to two different entities. In an attempt to avoid confusion, when using quoted language that refers to the former owner of the property, Teton Creek Resort, LLC, by the acronym "TCR" the acronym will be replaced with "[Teton Creek Resort]."

## AGREEMENTS, REPRESENTATIONS, WARRANTIES AND CONDITIONS

. . . .

2.0 [("the Mutual Releases Provision")] <u>Mutual Releases, Disclaimer and Cooperation</u>. Effective upon execution of this Agreement, each party, individually and jointly, mutually releases, from the beginning of time to the end of the world, each other party, their personal representatives, heirs, successors, and assigns, together with their respective owners, members, agents, partners, servants, officers, directors, attorneys, and representatives from any and all claims, actions, causes of action, suits, controversies, demands, covenants, contracts or provisions whatsoever, asserted or unasserted, known or unknown, which that party ever had, or now has, for or by reason of any act, omission, matter, cause, or thing whatsoever, including but not limited to, all claims which are asserted or could be asserted in, or in any way relate to or arise out of or regarding, the Dispute. With the exception of claims that may arise from the breach of this Agreement, the Parties do not intend to reserve any claims whatsoever against each other.

The Parties agree upon execution of this Agreement that through their legal counsel they will promptly execute and file a Stipulation for Dismissal, with prejudice, of the [Teton Creek Resort] III Litigation.

Ad Hoc, CTV and CARP further agree that they individually or jointly, from the execution of this Agreement until the end of the world, through any present or future members, officers, directors, employees, associates, or agents will not raise or cause to be raised, any claim or objection of any manner whatsoever, to the sale, development, zoning, land use plan or any other matter in any way arising from development or attempts to sell and develop the Teton Creek Resort Project at issue in, or relating to, arising out of or regarding the Dispute, provided the same are reasonably in accordance with the Recorded Plat, defined at paragraph 7.1. [Teton Creek Resort] agrees and acknowledges that Ad Hoc, CTV and CARP cannot control and are not responsible for an independent act of an individual who is among the membership of Ad Hoc, CTV or CARP, which act is not consistent with the intent of the parties to this Agreement, that Ad Hoc, CTV and CARP shall not use a member of their organization as an agent to bring or take an action which the organization has agreed not to bring or take under this Agreement.

. . . .

7.4 [("the Attorney Fees Provision")] <u>Enforcement</u>. All reasonable costs and expenses incurred by a party (including but not limited to reasonable attorney fees) in any actions, legal proceedings or investigations to enforce any substantial claim for breach of this Settlement Agreement shall be paid by the party who does not prevail as to such claim. In the event of breach of this Agreement, the Parties hereto shall have available to them all remedies afforded to them by applicable law, whether at law or in equity, including but not limited to, the remedy of specific performance.

(Underlining and bold lettering in original.)

In the present case, the district court found that the previous owner of the land on which the Teton Creek Resort is located and the County "had aligned interests at that point, as evidenced by [Teton Creek Resort's] intervention in that case on behalf of the County." Neither party disputes that TCR, the entity that currently owns the property, is bound by the terms of the Settlement Agreement, despite it not being an original party to the Settlement Agreement.

### 2. *Application before the Board*

The procedural history remained dormant until the current case ramped up in September 2020, after the Board refused to record TCR's Condominium Plat because TCR failed to submit final site plans, architectural designs and landscape drawings with the Condominium Plat. TCR subsequently filed an application with the County which sought County approval of the Condominium Plat. In a letter accompanying the application, TCR advised the County that it was filing the application under protest.

Armstrong, the County's Planning Administrator, initially reviewed TCR's application and prepared a report to the Board. Armstrong characterized the application as meeting the County Code's definition of an "insignificant plat amendment." In his capacity as the County's Planning Administrator, Armstrong had previously reviewed TCR's multiple applications in 2018 and 2019. Armstrong explained in his deposition that he originally determined that TCR's amendment of the PUD "met the criteria and definition of an insignificant plat amendment[]" on each of those prior occasions. In his report submitted to the Board, he wrote: "[T]he Planning Administrator shall recommend to the Board of County Commissioners approval, approval with conditions, or denial of the application pursuant to the criteria and standards in county regulations." Armstrong further noted: "Since the Final Plat was approved and recorded, November 13, 1995 (Instrument #122038) and amended July 30, 2019 (Instrument #255616), the 17 conditions of approval have been met."

The Board reviewed the matter in its meeting held in October 2020. However, the Board voted to deny TCR's plat amendment for Lot 12B "as filed pursuant to Teton County Code [section] 9-7-1" because substantial changes had been made as compared to the original site plan for Lot 12B. In an apparent response to the Board's denial of TCR's request to amend its Condominium Plat, TCR filed a petition for judicial review against the County seeking review of the County's denial under the Local Land Use Planning Act ("LLUPA").

### 3. TCR's Suit and Various Motions to Enforce

The following month, TCR filed suit against the County alleging two claims: a request for declaratory and injunctive relief ("the Declaratory and Injunctive Relief Claim") and breach of contract ("the Breach of Contract Claim"). The Declaratory and Injunctive Relief Claim sought to compel the Board to accept and record the Condominium Plat because it complied with the Idaho Condominium Property Act. The Breach of Contract Claim stemmed from allegations that the Board had "breached the Settlement Agreement by creating an obstacle to the construction of the Teton Creek Resort Project and demanding that the creation of the 16 condominium units be treated as an amendment to the Plat." The County filed an answer to TCR's complaint.

#### a. The Declaratory and Injunctive Relief Claim

TCR filed a motion for summary judgment on its Declaratory and Injunctive Relief Claim, "requesting an [o]rder that would enjoin the [Board] from refusing to accept the [Condominium] Plat and a declaration that the [Board] has violated Idaho Code Title 55 Chapter 15 [the Idaho Condominium Property Act]." The County filed a cross-motion for summary judgment "seeking dismissal of the TCR claims for Breach of Contract and Declaratory and Injunctive Relief." The County maintained it was within its bounds to deny the application for the Condominium Plat because the original PUD purportedly required development to adhere to a site plan.

The district court granted TCR's motion for summary judgment regarding its request for declaratory and injunctive relief and denied the County's motion for summary judgment on that claim. It also denied, without prejudice, the County's motion for summary judgment on TCR's Breach of Contract Claim. The district court further enjoined the County "from preventing any further attempt by TCR to record its Condominium Plat." The County subsequently recorded the Condominium Plat, albeit after it redacted the signature of the Chair of the Board.

#### b. TCR's 2021 Motion to Enforce

Shortly after the recording of the Plat, TCR filed a Motion to Enforce Court Order ("the 2021 Motion to Enforce") arguing that "the County has failed to 'accept' the Plat in accordance with the May 28, 2021[,] Memorandum Decision and Order" because it redacted the signature of the Chair of the Board and did not include a signature from the current County Treasurer. Notwithstanding the alteration of the Plat, the district court denied the 2021 Motion to Enforce, finding "there is no evidence that the [Condominium] Plat as now recorded is not a 'legal' recording[.]"

Several months later, "[i]n November 2021, Teton County approved and issued to TCR, LLC[,] seven (7) building permits for Lot 12B of Teton Creek Resort. . . . In December 2021, Teton County approved the eight (8) remaining building permits for Lot 12B of Teton Creek Resort."[5]

c. The Breach of Contract Claim

Also in December 2021, the parties filed renewed cross-motions for summary judgment regarding TCR's Breach of Contract Claim. This time, the district court granted the County's motion for summary judgment and denied TCR's motion for summary judgment. The district court concluded that the Settlement Agreement had not been breached by the County. The district court thereafter denied TCR's motion to reconsider.

d. TCR's 2022 Motion to Enforce

In April 2022, the County demanded that TCR stop work on Lot 12B and "revoked the fifteen active building permits for Lot 12B of the Teton Creek Resort." According to the County in a letter it sent to Statter:

> In December 2021, you submitted a condominium plat purported to be signed by the Teton County Commissioners as the required Site Plan to accompany the Building Permit Applications you had previously submitted for 15 residential units on Lot 12B. Upon further investigation, we have determined that [the] recorded condominium plat you supplied was not approved nor signed by the Teton County Commissioners. An unsigned unapproved condominium plat does not entitle TCR to building permits.
>
> . . . .
>
> Given this information, please be advised that the Teton County Building Department is withdrawing our approval of the . . . permits . . . .
>
> These permits were erroneously approved in December 2021. The permits were never issued and have now been changed to a status of Denied.
>
> Additionally, please be advised that I have issued Stop Work Notices for the permits that were issued in November 2021. . . .
>
> These Stop Work orders shall remain in place until the matter is resolved either by an agreement between all parties or by a final determination made through the courts.

_____

[5] Recording the Condominium Plat is a prerequisite to TCR receiving building permits for the development. It is unclear from the record why TCR received only fifteen building permits despite receiving approval to build sixteen condominium units, although TCR presumably already had one building permit prior to 2021.

Following the revocation of building permits and issuance of a stop work order, TCR filed a second motion to enforce ("the 2022 Motion to Enforce") with the district court. According to TCR, "the County's recent revocation of various building permits issued for the development of Lot 12B, and the issuance of a stop work order, constitute a violation of a court order or judgment previously entered in this case." Because the matter had already been appealed, the district court concluded "that the requested relief sought in TCR's motion – rescission of the stop work order and order for building permits – [went] beyond the scope of the [c]ourt's authority pursuant to [Idaho Appellate Rule] 13(b)." As a result of its analysis, the district court denied the 2022 Motion to Enforce.

Finally, the district court denied the County's request for attorney fees. Both parties appealed various decisions of the district court that were rendered throughout the litigation.

## II. ISSUES ON APPEAL

1. Did TCR's pending petition for review, filed in a separate case pursuant to LLUPA, preclude the district court from granting declaratory relief in this case?
2. Did the district court err in failing to admit what was purported to be the original site plan into evidence?
3. Did the district court err in granting TCR's claim for declaratory and injunctive relief?
4. Did the district court err in denying TCR's motions to enforce?
5. Did the district court err in granting summary judgment to the County when concluding that there were no genuine issues of material fact indicating that the County breached the 1996 Settlement Agreement?
6. Did the district court err in denying the County's request for attorney fees?
7. Is either party entitled to attorney fees on appeal?

## III. ANALYSIS

### A. TCR's pending petition for review filed in a separate case pursuant to LLUPA did not preclude the district court from granting declaratory or injunctive relief in this case.

The County first argues on appeal that the district court "lacked jurisdiction" to grant declaratory and injunctive relief for TCR because, the County contends, LLUPA is the exclusive remedy by which TCR may challenge the Board's actions. The County maintains that, in addition to this present appeal, TCR also filed a petition for judicial review in a separate action with the district court. In that case, TCR specifically challenged the Board's denial of its application seeking County approval of the Condominium Plat, which the Board directed TCR to file after the Board refused to record the Condominium Plat. TCR filed its petition for review in that case

10

pursuant to LLUPA. In short, the County argues that section 67-6521(1)(d) of LLUPA, which provides for judicial review of certain land use decisions by local governments, is the exclusive remedy by which TCR can challenge decisions of the Board. The County concludes that because TCR had a pending petition for judicial review under LLUPA in a separate action, the district court "lacked jurisdiction" to grant declaratory and injunctive relief in this case.

Before addressing the merits of this issue, we must first determine whether we should take judicial notice of certain documents from the judicial review proceeding that the County has attached to its opening brief. The petition for judicial review is *not* the subject of this appeal nor is it pending before this Court. The County also never moved this Court to augment the record with documents from TCR's separate action seeking judicial review under LLUPA. Thus, this Court never granted a motion to augment the record with documents from the judicial review action.[6] Instead, the County sought to bring these documents into the record by attaching them as "exhibits" to its brief on appeal. TCR argues that these exhibits are not properly before this Court because they are not in the record of this case. In response, the County argues this Court may take judicial notice of the exhibits "because the attachments are either part of the record, public record, or pleadings from the companion case filed by TCR[.]"

We will take judicial notice of the fact that TCR brought a petition for judicial review pursuant to LLUPA in a separate case, seeking review and reversal of the Board's rejection of TCR's application for a plat amendment. *See Bass v. Esslinger*, 171 Idaho 699, 704–06, 525 P.3d 737, 742–43 (2023). However, we do so *only* for the purpose of reviewing whether TCR's petition for judicial review precluded the district court from exercising its jurisdiction under the Idaho Declaratory Judgment Act.

The Idaho Rules of Evidence generally "govern all cases and proceedings in the courts of the State of Idaho. . . ." I.R.E. 101(b). Idaho Rule of Evidence 201 governs judicial notice of adjudicative facts and states that a court may take judicial notice at any stage of a proceeding. Thus, this Court may take judicial notice of an adjudicative fact for the first time on appeal. *See State v. Lemmons*, 158 Idaho 971, 978, 354 P.3d 1186, 1193 (2015) (W. Jones, J., concurring). An

---

[6] The County filed two motions with this Court to augment the record with documents that had been created and made part of the record in the underlying case. We granted both. These augmentations did not, however, request the addition to the record of the district court's decision in the case involving the petition for judicial review. TCR also filed a motion to augment the record with records generated in the underlying case, which we granted, though its augmentation did not include any documents pertaining to the petition for judicial review case.

adjudicative fact is "[a] controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties." *Id.* at 974, 354 P.3d at 1189 (internal quotation marks and citation omitted). Idaho Rule of Evidence 201(b) states:

> **(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:
>
> > (1) is generally known within the trial court's territorial jurisdiction; or
> >
> > (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

(Bold lettering in original.)

Having taken judicial notice of the fact that TCR filed a petition for review, we now turn to the merits of the County's argument. The County contends that TCR's petition for judicial review pursuant to LLUPA, filed in a separate lawsuit, deprived the district court of jurisdiction in this case because LLUPA is the exclusive means to challenge the Board's refusal to record the Condominium Plat. TCR responds that LLUPA does not apply to this case because TCR is not challenging a land use decision covered by LLUPA. Instead, TCR argues that it sought declaratory relief under the Idaho Declaratory Judgment Act, Idaho Code section 10-1202, for the County's violation of the Idaho Condominium Property Act, Idaho Code section 55-1523.

As noted, LLUPA provides that "[a]n affected person aggrieved by a final decision concerning matters identified in section 67-6521(1)(a), Idaho Code, may . . . seek judicial review[.]" Section 67-6521 defines an "[a]ffected person" as follows:

> (1)(a) As used herein, an affected person shall mean one having a bona fide interest in real property which may be adversely affected by:
>
> > (i) The approval, denial or failure to act upon an application for a subdivision, variance, special use permit and such other similar applications required or authorized *pursuant to this chapter*;
> >
> > (ii) The approval of an ordinance first establishing a zoning district upon annexation or the approval or denial of an application to change the zoning district applicable to specific parcels or sites pursuant to section 67-6511, Idaho Code; or
> >
> > (iii) An approval or denial of an application for conditional rezoning pursuant to section 67-6511A, Idaho Code.

(Emphasis added.) Only in these instances is judicial review under section 67-6521 available. *See id.* Moreover, in such circumstances, this Court has stated that "LLUPA's judicial review

provisions were intended to be the exclusive statutory bases for judicial review." *Giltner Dairy, LLC v. Jerome County*, 150 Idaho 559, 561, 249 P.3d 358, 360 (2011). Thus, section 67-6521(1)(d) is the exclusive right of action for challenging a local land use decision when it falls within the enumerated categories of subsection (1)(a).

Here, however, TCR is not challenging a land use decision covered by section 67-6521. TCR's complaint in this case alleged that the Board violated the Idaho Condominium Property Act by refusing to record its Condominium Plat. The Idaho Condominium Property Act prohibits a local government from "refus[ing] for recordation a plat or plats prepared pursuant to this act solely because a project is or condominiums are thereby created." I.C. § 55-1523. Notably, refusing to record a plat is not a land use decision covered by LLUPA. *See* I.C. §§ 67-6501 through 67-6539.

Additionally, unlike LLUPA, the Idaho Condominium Property Act does not list several requirements that must be met prior to filing a claim seeking declaratory and injunctive relief. In fact, the Idaho Condominium Property Act does not have a provision expressly addressing judicial review at all. *See generally* I.C. §§ 55-1501 through 55-1528. For this reason, TCR relied on the Idaho Declaratory Judgment Act, which provides a basis to seek declaratory relief:

> Any person interested under a deed, will, written contract or other writings constituting a contract or any oral contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined *any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise* and obtain a declaration of rights, status or other legal relations thereunder.

I.C. § 10-1202 (emphasis added).

We conclude TCR's petition for judicial review dealt with a different issue than the case before this Court. The petition for judicial review involved the Board's denial of TCR's application seeking approval of the Condominium Plat, which TCR only filed under protest after the County refused to record the signed Condominium Plat. The action before this Court deals with something different—the Board's initial refusal to record the signed Condominium Plat that reflected amendments to the PUD Plat, which the County had previously approved. As a result of the difference between the two actions, we reject the County's argument that the district court "lacked jurisdiction" to enter a declaratory judgment in this case. The County often phrases its argument as suggesting the district court "lacked jurisdiction" to decide this case. We take this opportunity to point out that while LLUPA provides the "exclusive remedy" for actions brought under that

13

chapter, the district court did not "lack jurisdiction" to decide whether the County's refusal to record the Condominium Plat violated the Idaho Condominium Property Act.

The County argues that our decision in *Giltner* indicates that the district court lacked authority to entertain the claims raised in this action. The question presented in *Giltner* was: "[C]an a party affected by a Board of County Commissioners' decision under LLUPA seek judicial review using the general jurisdictional grant of I.C. § 31-1506 where LLUPA does not explicitly authorize judicial review?" 150 Idaho at 560, 249 P.3d at 359. This Court determined that judicial review of a zoning decision was not available under Idaho Code section 31-1506 because LLUPA was the exclusive means by which to challenge the Board of County Commissioners' decision. *Id.* at 562, 249 P.3d at 361.

The present case, however, is distinguishable from *Giltner*. Unlike the aggrieved party in *Giltner* who filed a single petition for judicial review under two possible jurisdictional bases, TCR filed two separate actions. In this case, TCR brought a complaint seeking (1) damages for breach of contract and (2) declaratory and injunctive relief seeking to force the County to record TCR's previously approved Condominium Plat. In its second lawsuit, TCR brought a petition for judicial review of the Board's decision to require TCR to file an application to amend its Condominium Plat. TCR has maintained that these two separate suits present two different claims. One, the petition for judicial review case, deals with the Board's denial of TCR's amendment application. The second, the case before this Court, involves TCR's request for declaratory and injunctive relief to require the Board to record TCR's Condominium Plat. The refusal to record the Condominium Plat is not a local land use planning decision subject to LLUPA. Nothing in LLUPA indicates that it is intended to supersede an action brought pursuant to the Idaho Condominium Property Act. Instead, *Giltner* stands for the proposition that LLUPA provides the exclusive mechanism for *judicial review* of a local land use planning decision. *Id.* ("The logical inference from LLUPA's statutory scheme is that the legislature intended the judicial review provisions of the Act to be exclusive.").

Resolution of this action turns on an interpretation of the Idaho Condominium Property Act, not LLUPA. Thus, the district court here had the authority to resolve TCR's complaint in the way that it did. Having concluded that the district court properly exercised its authority over TCR's complaint, we now turn to the merits of the parties' appeals.

14

**B. The district court did not err in refusing to admit the Nemeth Affidavit and did not err in concluding that the County had failed to raise a genuine issue of material fact regarding the Board's refusal to record TCR's Condominium Plat.**

Several times throughout the course of proceedings before the district court, the County sought to admit the Affidavit of Leslie Nemeth ("the Nemeth Affidavit") and the purported "site plan" attached to it. The County maintained that it had not violated the Idaho Condominium Property Act, which prohibits a local government from refusing to record a plat solely because the project contains condominiums. The County argues it objected to the Condominium Plat because it did not comply with the site plan attached to the Nemeth Affidavit; thus, it had a legitimate reason for denying the recording of the Condominium Plat.

According to the County, the site plan was a condition of the County's 1995 approval of the PUD and limited what TCR could do with its property. However, the County's file related to the PUD does not contain a copy of a site plan. The County maintains that, according to the proffered site plan, TCR may only build sixteen condominium units if they are housed within two multi-unit, multi-story buildings. Conversely, the Condominium Plat that TCR had prepared contemplates the construction of sixteen standalone condominium units, which the County now argues is in violation of the County code, because it does not comport with the site plan attached to the Nemeth Affidavit.

To demonstrate this purported violation, the County sought to admit what it claimed to be the original site plan several times before the district court. First, the district court found as a matter of fact that "[a]lthough a condition for final approval of the PUD in 1995 required a site development plan, there is not one attached to the final PUD." The district court rejected the Nemeth Affidavit and the accompanying site plan, concluding that it

> is conspicuously inscribed with the caveat "NOT A LEGAL COPY" on each page. The site development plan attached as Exhibit "B" to the County's Memorandum in Support of Summary Judgment is submitted only in the form of argument, as it is an unrecorded document, and not offered to the [c]ourt under declaration or oath. Furthermore, the site development plan attached to the Declaration of Blake Hall is not considered as it is both unrecorded and lacks foundation to be considered as controlling, because no independent witness verified under declaration or oath a foundation for the document.

(Capitalization in original) (internal citations omitted). As a result of these findings, the district court concluded that the site plan proffered by the County was inadmissible.

With its motion to reconsider, the County submitted what it characterized as "an official copy of the document [site plan]," yet the district court still refused to consider the site plan for several reasons. This time, the Nemeth Affidavit and site plan were attached to the declaration of Jenifer Vanmeeteren-Shaum, a county recorder in Teton County, who "certified" that the Nemeth Affidavit contained a true and correct copy of the site plan. The district court found that the site plan still did not contain the same instrument number as was present on the Nemeth Affidavit, so it was unclear "whether it was attached to the [a]ffidavit when it was recorded." Moreover, the district court concluded:

> [T]he fact that the [Nemeth] Affidavit was filed and recorded *two years after* the PUD was submitted for final approval, and is not attached to the PUD or any of the subsequent amendments to the PUD, supports the determination that the Site Development Plan in the record before the [c]ourt is not controlling.

(Emphasis added.) Without the admission of the site plan, the district court concluded that "there are no documents in the record to support the [County's] claim that a site development plan in this case specified that the 16 condominiums TCR seeks to develop must be contained in two multi-unit buildings."

On appeal, the County argues that the district court should have analyzed the admissibility of the Nemeth Affidavit that had been submitted without the "not a legal copy" disclaimer pursuant to Idaho Rule of Civil Procedure 56. In the alternative, the County argues that this Court may take judicial notice of the site plan because it is in the public record. TCR argues that the County cannot rely on the Nemeth Affidavit for several reasons. First, TCR contends that the "site plan" attached to the Nemeth Affidavit is inadmissible under Idaho Rule of Civil Procedure 56(c)(4) because it is not based on Nemeth's personal knowledge. Further, TCR maintains that it did its due diligence by "look[ing] at the recorded documents of the final plat[,]" yet it still "had no knowledge that a site plan controlled the placement of condominiums when it purchased the property[,]" supporting the idea that the site plan was unrecorded. Finally, TCR claims that the "site plan" is immaterial because the Board on two prior occasions approved amendments to the PUD Plat that specifically called for sixteen standalone condominiums.

This Court employs the same standard as used by the district court when reviewing a motion for summary judgment. *See Mut. of Enumclaw Ins. Co. v. Pedersen*, 133 Idaho 135, 138, 983 P.2d 208, 211 (1999).

> The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact [and] the movant is entitled to judgment as

16

a matter of law. All disputed facts must be liberally construed in favor of the nonmoving party, and all reasonable inferences from the record must be drawn in favor of the nonmoving party. Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case. This Court reviews questions of law *de novo*.

*Farm Bureau Mut. Ins. Co. of Idaho v. Cook*, 163 Idaho 455, 458, 414 P.3d 1194, 1197 (2018) (quotations marks and citations omitted).

Motions for summary judgment are governed by Idaho Rule of Civil Procedure 56. Idaho Rule of Civil Procedure 56(c)(4) states that an affidavit filed in summary judgment proceedings "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Idaho Rule of Civil Procedure 56(c)(4) "affords the trial court discretion to determine whether affidavits offer admissible evidence[.]" *Neeser v. Inland Empire Paper Co.*, 170 Idaho 692, 698, 516 P.3d 562, 568 (2022).

We hold that the district court did not err when it refused to admit the purported site plan, in either of its iterations. Not only was the Nemeth Affidavit recorded two years *after* the PUD was approved, but there was no evidence presented that Leslie Nemeth was available to testify regarding the contents of her affidavit and attached site plan as required by Idaho Rule of Civil Procedure 56(c)(4). Likewise, the affidavit of Vanmeeteren-Shaum, which was created more than twenty years after Nemeth's, does not reflect her personal knowledge. Consequently, the district court did not err in rejecting the affidavits of both Nemeth and Vanmeeteren-Shaum.

More importantly, in 2018 and 2019, the County approved amendments to the PUD Plat that permitted sixteen standalone condominiums on Lot 12B. The district court found that TCR noted in its amendment applications in 2018 and 2019 that it "intended to place individual condominium units on [Lot 12B]." The district court further found that the Planning and Zoning Commission and the Board had both considered *and approved* these amended applications in 2018 and 2019, without referencing the site plan. According to the district court, notes from the Planning and Zoning Commission to the Board dated June 9, 2018, and December 10, 2018, "indicate to the [Board] that TCR intended to place *individual condominium units* on [Lot 12B]." (Emphasis added.) The district court further found that, in 2019, the Planning and Zoning notes to the Board "indicate[d] that TCR intended to place *individual condominium units* on [Lot 12B]." (Emphasis added.) The Board subsequently approved TCR's application after concluding it was an

insignificant amendment to the PUD Plat. The Board's efforts to now rely on the original site plan after approving multiple amendments to the PUD Plat is an effort to engage in revisionist history. The County's reliance on the purportedly original site plan is nothing but a red herring. It is immaterial to the resolution of the issues before the district court and this Court.

Because we conclude that the district court did not err in refusing to admit the site plan attached to the Nemeth Affidavit, we also affirm its decision that there was no dispute of material fact regarding the Board's obligation to record the Condominium Plat. As stated by the district court, once a party "compl[ies] with the express requirements of the [Idaho Condominium Property] Act . . . refusal to approve a condominium project is not allowed if based solely on the reason that the development contains condominiums." (Citing I.C. § 55-1523.) Because the Board's reason for refusing to record the Condominium Plat relied on the inadmissible site plan, there was no valid reason for the Board to have refused to record TCR's Condominium Plat. As stated by the district court: "[T]he County's reliance on a site development plan, which for purposes of this motion is not considered by the [c]ourt . . . results in a determination that there is no legal basis for further refusal of the County to accept and record TCR's Plat." The Board's efforts to require TCR to jump through more hoops following the Board's approval of two different amendments to the PUD Plat appears to be an effort to move the goalposts and restart a game that has already been played.

In sum, we conclude that the district court did not err in concluding that the County had no lawful basis to refuse to record TCR's Condominium Plat.

## C. The district court did not err in granting TCR's claim for declaratory and injunctive relief.

The County next argues that the district court erred in granting declaratory and injunctive relief to TCR because (1) TCR had not exhausted its administrative remedies and (2) the recordation and amendment of building plats is governed by the requirements of the County's code, rather than those of the Idaho Condominium Property Act. Each argument will be discussed in turn.

### 1. The district court erred in concluding that TCR was required to exhaust its administrative remedies, but this error is harmless.

The district court concluded that TCR had exhausted its administrative remedies sufficiently to bring its claim for declaratory relief. We hold that the district court erred in concluding that the Condominium Property Act imposes an obligation to exhaust one's remedies

before seeking recourse under the Act. Exhaustion of administrative remedies is uniquely a requirement imposed by administrative law. *See Grever v. Idaho Tel. Co.*, 94 Idaho 900, 903–04, 499 P.2d 1256, 1259–60 (1972) (quoting *McKart v. United States*, 395 U.S. 185, 194 (1969) (the exhaustion of administrative remedies is "a notion peculiar to administrative law" because the "administrative agency is created as a separate entity and invested with certain powers and duties")). However, the Condominium Property Act does not concern administrative law and contains no exhaustion requirement. Because the Act does not contain an exhaustion requirement, the district court erred in concluding one existed. However, the decision was harmless because the district court also concluded that TCR had exhausted its administrative remedies.

2. *The district court did not err in concluding that the County's code did not enable the County to refuse to record TCR's Condominium Plat.*

The County next argues that its code takes priority over the Idaho Condominium Property Act, and as a result, the County Code controls whether a condominium plat needed to be amended prior to it being recorded. The gist of the County's argument is that it did not refuse to record TCR's plat solely because the project involved condominiums. Instead, The County maintains it refused to record TCR's plat as a result of TCR's plat not conforming to the County's code.

The County maintains that TCR's Condominium Plat constituted a "substantial" change to what had been approved in 1995. As a result, it contends it properly refused to record TCR's plat. We conclude the County's argument is without merit.

Idaho Code section 55-1508 reads as follows:

The declaration, plat or plats, deeds, by-laws, administrative provisions, articles of incorporation as provided in section 55-1506[, Idaho Code], and instrument by which the provisions of this act may be waived, and every instrument affecting the project or any condominium, and any amendment or amendments to such documents, *shall be entitled to be recorded by the county recorder in the county of counties where the project is located, and such officer shall accept for recordation when requested to do so.*

(Bracketed language in original) (emphasis added). As previously noted, the Board approved amendments to the PUD Plat in 2018 and 2019 and approved sixteen standalone condominium units on Lot 12B. As such, the County had no legal basis to refuse to record the Condominium Plat because it reflected the previously approved amendments to the PUD Plat.

We conclude the County has failed to show a valid reason for its continuous, unjustified refusal to record TCR's Condominium Plat. Accordingly, the district court did not err in requiring the County to record the Condominium Plat. Because the County failed to establish a basis for its

refusal to record the Condominium Plat, the district court appropriately entered the Declaratory Judgment and enjoined the County from preventing TCR's attempts to record its Condominium Plat.

**D. The district court did not err in denying TCR's first motion to enforce, but the district court erred in denying TCR's second motion to enforce.**

TCR filed two motions to enforce during this litigation. The district court denied both motions, and TCR appeals those denials. Each will be discussed in turn.

### 1. *The 2021 Motion to Enforce*

After the district court granted TCR's motion for summary judgment on its claim for declaratory and injunctive relief, TCR moved the district court to "order the County to record the [Condominium] Plat in accordance with the [c]ourt's decision and Idaho law." TCR took issue with the fact that, although the County had recorded the Condominium Plat, the signature of the Board Chair was blacked out, and the County failed to update the signature of the current County Treasurer. The district court denied TCR's motion after concluding that TCR failed to show that the County did not "legally record []" the Condominium Plat. In particular, the district court determined that TCR had provided no evidence "that the signature issues present a cloud on title or have affected marketability."

On appeal, TCR argues that the recording of the Condominium Plat without proper signatures violates Idaho Code section 50-1308 and the Idaho Condominium Property Act. The County maintains that it complied with the district court's original decision, which ordered the County to *record* the Condominium Plat; the district court did not, however, require the Board to *sign* the Condominium Plat.

TCR's argument that the County was required to sign the Condominium Plat in order for it to be considered legally recorded is premised on section 50-1308's requirement that:

> (1) If a *subdivision* is not within the corporate limits of a city, the plat thereof shall be submitted, accepted and approved by the board of commissioners of the county in which the tract is located in the same manner and as herein provided. If the city or county has established a planning commission, then all plats must be submitted to said commission in accordance with provisions of chapter 65, title 67, Idaho Code. *No plat of a subdivision requiring city approval shall be accepted for record by the county recorder unless said plat shall have first been submitted to the city and has been accepted and approved and shall have written thereon the acceptance and approval of the said city council and bear the signature of the city engineer and city clerk.* No plat of a subdivision shall be accepted for record by the county recorder unless said plat has been certified, within thirty (30) days prior to

20

recording, by the county treasurer of the county in which the tract is located. The county treasurer shall not withhold certification for any reason except for county property taxes due, but not paid, upon the property included in the proposed subdivision.

(2) Plats resulting from the exercise of any right granted under the provisions of sections 50-1314 and 63-210(2), Idaho Code, may be accepted for record and recorded by the county recorder without being certified by the county treasurer and the record of any such plat which has previously been recorded without being certified by the county treasurer shall not be invalid or defective be because of not having been so certified by the county treasurer.

(Emphasis added).

However, Idaho Code section 50-1308 plainly applies to subdivisions, not condominium projects. Both parties conflate the terms "subdivision plat" and "condominium" repeatedly throughout their briefing below and on appeal. In supplemental briefing ordered by the Court, the County argues that the applicability of section 50-1308 depends on the nature of the plat submitted, suggesting that TCR's pleadings show that its Condominium Plat was actually a subdivision plat attempting to make a substantial amendment to the original PUD. The County maintains that if TCR's Condominium Plat is treated as a subdivision plat, TCR's appeal must fail based on its failure to exhaust administrative remedies. TCR counters that the subdivision for the land already occurred in 1995 when the original Teton Creek Resort PUD was approved and certain lots (that were subdivided in accordance with LLUPA and Idaho Code section 50-1308(1)) were approved for condominium units. TCR then claims, for the first time, that the "approval requirements" of section 50-1308(1)—which would include the signature requirement—may not apply to condominium plats, such as TCR's submission in this case. Nonetheless, TCR advocates that because there is no local ordinance regulating how approval is evidenced on a condominium plat, section 50-1308(1) is instructive. We are not convinced.

"The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act." *Nelson v. Evans*, 166 Idaho 815, 820, 464 P.3d 301, 306 (2020) (quoting *State v. Dunlap*, 155 Idaho 345, 361–62, 313 P.3d 1, 17–18 (2013)). "Statutory interpretation begins with the literal language of the statute." *Id.* "Provisions should not be read in isolation, but must be interpreted in the context of the entire document." *Id.* The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings." *Id.* "[T]he Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant." *Id.*

21

The terms "condominium" and "subdivision" are distinct. The subdivision statute defines a "subdivision" as a "tract of land divided into five (5) or more lots, parcels, or sites for the purpose of sale or building development, whether immediate or future. . . ." I.C. § 50-1301(18). This statutory definition further provides: "Cities or counties may adopt their own definition of subdivision in lieu of this definition." *Id.* Conversely, a condominium is defined under Idaho Code section 55-1503(a) as "an estate in property as defined in section 55-101B, Idaho Code, as amended." Section 55-101B further defines a condominium as "an estate consisting of (i) an undivided interest in common in real property, in an interest or interests in real property, or in any combination thereof, together with (ii) a separate interest in real property, in an interest or interests in real property, or in any combination thereof." I.C. § 55-101B.

The plain language of Idaho Code section 50-1308 applies to subdivision plats. The statutory language prohibits the county recorder from accepting a "plat of a subdivision" unless the plat is "first . . . submitted to the city and has been accepted and approved…and bear[s] the signature of the city engineer and city clerk." I.C. § 50-1308. The statute does not reference or otherwise address condominium plats. As such, section 50-1308 is inapplicable to the district court's denial of TCR's motion to enforce.

With that question resolved, we next consider whether Idaho Code section 55-1523 requires Teton County to sign the plat before recording. Title 55, Chapter 15 of the Idaho Code encompasses the Condominium Property Act. *See* I.C. §§ 55-1501 to 55-1528. Under this Chapter, TCR alleged that Teton County violated section 55-1523, which addresses a board's refusal to approve a project:

> No city council, board of trustees, or other governing body of the county, town, village or city in which a project is created pursuant to this act shall have the right to refuse acceptance or approval of nor may any county refuse for recordation a plat or plats prepared pursuant to this act solely because a project is or condominiums are thereby created.

I.C. § 55-1523.

Nothing under Idaho Code section 55-1523 required Teton County to sign the plat before recording it. Because we conclude that Teton County was not required to sign the plat, we also hold that the district court did not err when it denied TCR's first motion to enforce.

### 2. *The 2022 Motion to Enforce*

After the district court ordered the County to record the Condominium Plat, the County issued building permits to TCR. As explained by the County on appeal:

22

Following the recordation of the [C]ondominium [P]lat, Teton County initially issued building permits for Lot 12B based on the representation by TCR that the recorded condominium plat had been approved and signed by the Board of County Commissioners. However, after TCR withdrew its plat amendment . . . the building permits were suspended, and a stop work order was issued.

In response to these events, TCR filed its 2022 Motion to Enforce the district court's original order granting summary judgment and the final judgment, arguing that the revocation of the building permits "constitute[d] a violation of a court order or judgment[.]" In essence, TCR sought an order requiring the County to record a valid Condominium Plat which, if it had been done, would then enable TCR to obtain building permits to construct the approved condominiums. The district court refused to grant TCR's 2022 Motion to Enforce, reasoning "this matter is currently under appeal, and . . . this [c]ourt is now divested of jurisdiction except for those specific issues prescribed in I.A.R. 13(b)." Because the prayer for relief in TCR's complaint did "not address post-recordation actions including the issuance of building permits in conjunction with the recordation of the Condominium Plat[,]" the district court concluded that it did not have jurisdiction to grant the 2022 Motion to Enforce.

TCR argues on appeal that "[t]he County had no legal right to revoke the building permits on the basis that the building permits do not comply with an inapplicable site plan that does not control the layout of the condominiums." In other words, because TCR complied with the local zoning requirements, it was "entitled" to the building permits.

The County argues that it "had complied with the district court's [previous] orders, [so] it lacked jurisdiction under [Idaho Appellate] Rule 13(b)(13) to grant the relief requested[.]" The County's argument is that because the district court's order only required the County to record the Condominium Plat, and not to issue building permits, the district court correctly determined that it was without jurisdiction to order the Board to issue building permits. Finally, the County argues that "the building permits at issue in this case do not comply with the site development plan, [so] TCR cannot show that it is entitled to the building permits."

We hold that the district court erred in denying TCR's 2022 Motion to Enforce. After the filing of a notice of appeal, Idaho Appellate Rule 13(b) limits the jurisdiction of the district court to several discrete matters, including to "[t]ake any action or enter any order required for the enforcement of any judgment or order." I.A.R. 13(b)(13). The district court's order for summary judgment stated: "[T]he County is enjoined from preventing any further attempt by TCR to record

23

its Condominium Plat." Though the district court took a restrained approach in enforcing its order, it should not have.

TCR's complaint did not reference building permits specifically, but it did request that the district court order the County to "accept, approve and record the Condominium Plat[.]" Going one step further, in its memorandum in support of its motion for summary judgment, TCR stated that it was attempting "to record the paperwork *necessary to develop* the approved condominium units." (Emphasis added). Section 6-8-3 of Teton County's Code states that a building permit application "shall not be denied unless it fails to comply with the required [c]odes and the ordinance of the county." Thus, once a plat has been recorded, a developer may apply for and be approved for building permits, assuming all other conditions have been met. In other words, it would have been redundant for TCR to request the district court to order the recordation of the Condominium Plat and to also order the County to issue building permits, because TCR would have been entitled to the issuance of building permits upon the recording of the Condominium Plat. In sum, TCR should not have been required to file a new lawsuit every step of the process just because the County repeatedly acted to prevent the effect of the Court's original order.

There is no evidence suggesting that the district court was unaware of the fact that TCR's end goal was to develop Lot 12B with Condominium Units. TCR stated as much in its complaint and memorandum in support of its motion for summary judgment. The district court had the authority to enforce its prior orders. However, its inaction allowed the County to thwart TCR despite the district court's earlier orders.

Regarding the County's argument that "the building permits in this case do not comply with the site development plan," we find the County's argument specious. As noted, the Board approved amendments to the PUD Plat which authorized TCR to build sixteen individual standalone condominiums on Lot 12B. The Board's efforts to use an outdated site plan that is not contained in the record as its justification to prevent TCR from doing what it was lawfully entitled to do is nothing more than an effort to revise history.

The dissent agrees with the district court that because "TCR had never requested the particular relief sought in the 2022 motion . . ." the requested relief was correctly rejected. The dissent goes on to say,

> [t]he majority concludes that the district court erred in denying the motion because
> TCR stated in its memorandum in support of a motion for summary judgment that
> it was attempting 'to record the paperwork necessary to develop the approved

24

condominium units' and that Teton County's Code provides that a building permit application shall not be denied unless it fails to comply with the requirements of required codes and county ordinances. In other words, the majority's conclusion rests on the fact that TCR had said it was trying to develop the units and under the County's ordinances it was entitled to the building permits. *This may well be true.* But that does not mean the district court had continuing authority under [Idaho Appellate] Rule 13(b)(13) to issue any relief it deemed necessary to prevent the County from interfering with TCR's construction of the condominium units.

(Emphasis added).

While Idaho Appellate Rule 13(b)(13) does not give the district court unlimited ability to do whatever it chooses, it nevertheless affords the district court the ability to "[t]ake any action . . . required for the enforcement of any judgment. . . ." The dissent seems to disregard the fact that the Final Judgment issued by the district court "enjoined [Teton County] from preventing any further attempt by TCR to record [its] Condominium Plat." The recording of a lawful Condominium Plat by TCR (which was the gravamen of the district court's judgment) should have entitled TCR to obtain building permits (by operation of Teton County's ordinances) to construct the approved condominiums on Lot 12B. The gist of TCR's enforcement action was to enjoin Teton County from preventing the recording of a lawful Condominium Plat by TCR. Had Teton County done what it was ordered to do by the district court it would not have been necessary for TCR to seek enforcement of its judgment. Teton County's actions were obstreperous regarding the district court's judgment. The County was doing everything it could to prevent TCR from proceeding on its lawful Condominium Plat. Under Idaho Appellate Rule 13(b)(13), the district court had the jurisdiction to enforce its judgment in such a way that would have enabled TCR to proceed with construction. As a result, the district court erred in denying TCR's 2022 Motion to Enforce.

> **E. There are genuine issues of material fact regarding whether the County breached the 1996 Settlement Agreement. As a result, the district court erred in granting summary judgment to the County on the Breach of Contract Claim and the Breach of the Implied Covenant of Good Faith and Fair Dealing Claim.**

After the district court granted TCR's motion for summary judgment on the Declaratory and Injunctive Relief Claim and enjoined the County from hindering TCR's attempts to record its Condominium Plat, it considered the parties' renewed motions for summary judgment on TCR's Breach of Contract Claim. TCR's Breach of Contract Claim involved its claim that the County had breached the 1996 Settlement Agreement that had been signed by TCR's predecessor in interest

and the County.[7] The district court determined that the provisions of the Settlement Agreement entitled "Recitals," upon which TCR based its Breach of Contract Claim, "are not binding provisions" of the contract and instead "provide background information as to the intent of the parties." Further, the district court concluded that "the County did not agree, and was not bound, to a prohibition" of raising "any claim or objection [to the development proceeding.]" "[T]he contract is clear that this specific term was between the County / [and Teton Creek Resort] on one side, versus the Activist Groups on the other." The district court found this point to be additionally supported by the fact that "[Teton Creek Resort] had intervened in [Teton Creek Resort] Litigation III[8] – on the County's side[.]" The district court also found that the County had not breached the more broadly worded Mutual Releases Provision of the Settlement Agreement; it only sought "compliance with existing laws in regulating completion of TCR's development." In other words, "[t]he Settlement Agreement does not require the County to forego compliance with or enforcement of the laws relating to TCR's project."

Even if these provisions applied, the district court concluded that "TCR has not presented any evidence to suggest that the County initiated any lawsuit or claim with respect to the PUD's development. Rather, the County sought TCR's compliance with county statutory requirements." For the foregoing reasons, the district court denied TCR's motion for summary judgment and granted the County's motion for summary judgment on the Breach of Contract Claim.

TCR argues on appeal that the County breached the Settlement Agreement when it (1) refused to accept and record the Plat; (2) redacted the Board Chair's signature; and (3) required TCR to file an additional plat amendment application. TCR argues that the County breached the Mutual Releases Provision of the Settlement Agreement in which it promised not to raise further claims or causes of action that "could be asserted in, or in any way relate to or arise out of or

---

[7] The Settlement Agreement was signed by multiple entities including the Ad Hoc Committee against Teton Creek Resort, Citizens for Teton Valley, the Community Association for Responsible Planning (collectively "the Activist Groups"), the Teton Creek Resort, LLC (TCR's predecessor in interest), and the Chair of the Board of County Commissioners for Teton County. The Activist Groups are not involved in the present dispute between the County and TCR.

[8] According to the Settlement Agreement, "[Teton Creek Resort] Litigation III" is the appeal of the "final plat approval to the Teton Creek Resort Project . . . entitled <u>The Ad Hoc Committee Against Teton Creek Resort, Citizens for Teton Valley, and The Community Association for Responsible Planning, Appellants, vs. Board of County Commissioners of Teton County, Idaho, Respondent, Teton Creek Resort, L.L.C., Intervenor</u>, Case No. CV 95-0128[.]" (Underlining in original.)

regarding, the Dispute."[9] Next, TCR argues that the district court erred when it concluded that the County had only denied the plat amendment because it was "seeking compliance with existing laws[.]" Additionally, TCR contends that the Settlement Agreement "clear[s] the way for TCR to be developed in accordance with the recorded and fully executed PUD Plat."

The County argues that the basis for TCR's Breach of Contract Claim cannot override the County's requirements for an entity "to comply with the conditions of approval for the PUD[.]" Specifically, the County argues that TCR's reliance on the "obstacle" language of the Recitals Provision, rather than the Mutual Releases Provision, of the Settlement Agreement is insufficient to support a breach of contract claim. Additionally, the County contends that this Court has stated that the recitals are only applicable when interpreting the intent of the parties; thus, the recitals should only be considered if the body of the Settlement Agreement is found to be ambiguous. In sum, "the County did not and could not relieve itself from requiring that TCR legally comply with statutory requirements for the construction of the PUD." Accordingly, the County asserts the district court's grant of summary judgment on this issue should be affirmed.

We hold that the district court erred in granting summary judgment to the County on TCR's Breach of Contract Claim because it misperceived whether the County was bound by the Settlement Agreement. To succeed on a breach of contract claim, a plaintiff must demonstrate: "(a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Safaris Unlimited, LLC v. Von Jones*, 158 Idaho 846, 850, 353 P.3d 1080, 1084 (2015) (internal quotation marks and citation omitted).

As an initial point, the district court incorrectly concluded that the Recitals Provision was immaterial to TCR's Breach of Contract Claim. The four elements of a breach of contract claim do not require focusing on only some parts of a contract and not on others. Instead, the first question is whether the contract, as a whole, is ambiguous or unambiguous. *Houston v. Houston*, 172 Idaho 264, 271, 531 P.3d 1161, 1168 (2023). If the contract is unambiguous, we look within the *four corners* of a document to determine the intent of the parties. *Id.* This intent may be expressed in the recitals provision of the document. *Brooks v. Terteling*, 107 Idaho 262, 264, 688 P.2d 1167, 1169 (1984).

---

[9] The Settlement Agreement defined "The Dispute" to include three legal challenges during the 1990s involving TCR's predecessor, the County, and three activist organizations, all pertaining to the development of the original PUD.

The district court determined that the operative portion of the Settlement Agreement (the Mutual Releases Provision) was unambiguous. However, it erred when it limited its review of the contract to only the Mutual Releases Provision instead of the entire four corners of the document.

The Settlement Agreement begins by defining all involved parties:

> This Mutual Release and Settlement Agreement . . . is entered . . . among: Teton Creek Resort, LLC, a Wyoming limited liability company ("[Teton Creek Resort]"); The Ad Hoc Committee Against Teton Creek Resort ("Ad Hoc"); Citizens For Teton Valley ("CTV"); The Community Association for Responsible Planning ("CARP")[;] and the Board of County Commissioners for Teton County, Idaho ("Board"), (sometimes collectively referred to as "*the Parties*").

(Italics added.) The Settlement Agreement then continues with the Recitals Provision, which states:

**RECITALS:**

> . . . .
>
> B. *The Parties* have decided and agreed that, to avoid further expense and inconvenience, the uncertainty of litigation, *and to remove obstacles to the construction of the Teton Creek Resort Project*, it is in their respective best interests to enter into this Settlement Agreement and finally and forever settle and resolve all outstanding claims and differences among them, involved in, but not limited to the [Teton Creek Resort] Litigations I, II, and III (the "Disputes") by way of compromise and without any admission of liability by any party in accordance with the terms set forth below.

(Emphasis added). These initial paragraphs in the Settlement Agreement indicate that the purpose of the Agreement was to "remove obstacles to the construction of the Teton Creek Resort Project" and that the contract shall apply to all involved *parties*, not just those that are on one side of the litigation or the other, as incorrectly suggested by the district court. Later, the "operative" language of the contract arises within the Mutual Releases Provision, which reads:

> Effective upon execution of this Agreement, *each party*, individually and jointly, mutually releases, from the beginning of time to the end of the world, *each other party*, their personal representatives, heirs, successors, and assigns, together with their respective owners, members, agents, partners, servants, officers, directors, attorneys, and representatives from any and all claims, actions, causes of action, suits, controversies, demands, covenants, contracts or provisions whatsoever, asserted or unasserted, known or unknown, which that party ever had, or now has, for or by reason of any act, omission, matter, cause, or thing whatsoever, including but not limited to, all claims which are asserted or could be asserted in, or in any way relate to or arise out of or regarding, the Dispute. *With the exception of claims that may arise from the breach of this Agreement, the Parties do not intend to reserve any claims whatsoever against each other.*

28

. . . .

> *Ad Hoc, CTV and CARP further agree* that they individually or jointly, from the execution of this Agreement until the end of the world, through any present or future members, officers, directors, employees, associates, or agents will not raise or cause to be raised, any claim or objection of any manner whatsoever, to the sale, development, zoning, land use plan or any other matter in any way arising from development or attempts to sell and develop the Teton Creek Resort Project at issue in, or relating to, arising out of or regarding the Dispute, provided the same are reasonably in accordance with the Recorded Plat, defined at paragraph 7.1.

(Emphasis added).

The district court determined that TCR and the County were aligned on the same side of the litigation as opposed to Ad Hoc, CTV, and CARP (the Activist Groups), so the Settlement Agreement only worked to preclude claims by the Activist Groups against TCR or the County. However, the very beginning of the Settlement Agreement explains that the purpose of the Settlement Agreement is to remove the obstacles to the construction of the Teton Creek Resort project. This language can be read to preclude the County from doing anything within its power to defeat or obstruct the construction of the Teton Creek Resort project. The Recitals Provision also defines "the Parties[,]" which includes TCR's predecessor, the *County*, and the Activist Groups. Reading the document in its entirety, it presents a clear question of fact to be resolved by a factfinder as to whether the County breached its obligations to TCR under the Agreement.

The dissent chooses to read the Settlement Agreement narrowly, concluding that the Recitals Provision has no bearing on the obligations imposed on Teton County. However, such a narrow reading is not supported by either this Court's case law or the elements of the implied covenant of good faith and fair dealing. Indeed, the argument that the district court should be precluded from analyzing every word within the four corners of the document is contrary to this Court's jurisprudence and the Restatement. *See, e.g.*, *Houston*, 172 Idaho at 271, 531 P.3d at 1168; RESTATEMENT (FIRST) OF CONTRACTS § 235(c) (1932) ("A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together."); *see also* RESTATEMENT (FIRST) OF CONTRACTS § 235(c) cmt. d. Here, the district court erred in limiting its analysis of the Agreement to whether the Mutual Releases Provision was ambiguous, instead of considering the entire Settlement Agreement, including the Recitals Provisions.

For all the reasons stated, we find it necessary to reverse the district court's order granting the County's motion for summary judgment on TCR's Breach of Contract Claim and remand the issue to the district court for further proceedings consistent with this decision.

29

TCR next asserts that the district court erred when it dismissed TCR's claim that the County breached the implied covenant of good faith and fair dealing. The district court ultimately concluded that the County had not breached the implied covenant for two reasons: First, as explained, it did not perceive the County as a party held to the obligations created by the Mutual Releases Provision of the Settlement Agreement; and second, it could not find any "facts supporting bad faith, dishonesty, or unfairness in attempting to enforce its regulatory function relating to TCR's development."

"The implied covenant of good faith and fair dealing is a covenant implied by law in the parties' contract." *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 192, 108 P.3d 332, 339 (2005) (internal citation omitted). "The covenant requires the parties to perform, in good faith, the obligations required by their agreement, and a violation of the covenant occurs when either party violates, nullifies or significantly impairs any benefit of the contract." *Fox v. Mountain W. Elec., Inc.,* 137 Idaho 703, 710-11, 52 P.3d 848, 855-56 (2002) (citation omitted).

Because we are remanding this case for a factfinder to determine if the County breached the Settlement Agreement, it would be incorrect to preclude TCR from also pursuing its claim that the Board breached the covenant of good faith and fair dealing implied by law in the parties' contract. Suffice it to say, there is enough evidence in the record to conclude that TCR should be allowed to pursue its claim that the Board breached the implied covenant of good faith and fair dealing. For instance, the County's claim—that it was only trying to enforce its code—has been shown to be baseless given the fact that the County had previously approved the amendment of the site plan on two separate occasions. In addition, the Settlement Agreement states specifically that: "The Parties [which explicitly includes Teton County] have decided and agreed that, to avoid further expense and inconvenience the uncertainty of litigation, *and to remove obstacles to the construction of the Teton Creek Project* [which included the construction of sixteen condominiums], it is in their respective best interest to enter into this Settlement Agreement. . . ." (Emphasis added). It is inarguable that one of the major benefits inuring to TCR from the Settlement Agreement is that Teton County would not create obstacles to the construction of TCR's project. Given these facts, a factfinder could conclude the Board breached the covenant of good faith and fair dealing. As a result, we reverse the district court's grant of summary judgment to the County on TCR's claim that the Board breached the implied covenant of good faith and fair dealing.

30

**F.  We decline to address the County's appeal seeking attorney fees below.**

The County argues that the district court abused its discretion when it denied the County's request for attorney fees pursuant to Section 7.4 of the Settlement Agreement because it prevailed on the Breach of Contract Claim. However, we have reversed the district court's decision granting summary judgment to the County on TCR's claims for breach of contract and for breach of the implied covenant of good faith and dealing. As a result, the basis upon which the County sought attorney fees under the Settlement Agreement has been reversed. With the reversal of the district court's decision, the County's appeal on that basis has been rendered premature.

We hold that the County's appeal seeking attorney fees based on Section 7.4 of the Settlement Agreement does not need to be resolved because of the way we have resolved other issues in this appeal. When this Court remands claims to the district court for further proceedings, "any determination of the prevailing party is premature until the case is finally resolved." *Christiansen v. Potlatch #1 Fin. Credit Union*, 169 Idaho 533, 544, 498 P.3d 713, 724 (2021) (internal quotation marks and citation omitted). Here, because we have reversed the district court's decision granting summary judgment to the County on TCR's Breach of Contract Claim and its claim for breach of the covenant of good faith and fair dealing and remanded those issues to the district court to be resolved by a fact finder, any decision regarding attorney fees based on those two claims would be premature at this stage of the case. Accordingly, we find it unnecessary to address the County's appeal as to this issue.

**G.  TCR is entitled to its attorney fees and costs on appeal.**

Finally, both parties request attorney fees on appeal pursuant to Idaho Code section 12-117. We hold that TCR is entitled to its attorney fees on appeal. This Court may award attorney fees pursuant to Idaho Code section 12-117 "if it finds that the nonprevailing party acted without a reasonable basis in fact or law." Here, TCR is the prevailing party on appeal because all issues have been resolved in its favor. The County also did not have a reasonable basis in fact or law to pursue this appeal, as evidenced by its actions both before and after this litigation commenced. Indeed, this litigation is largely the result of the Board's refusal to record the Condominium Plat, which contradicted its prior approval of amendments to the PUD that permitted TCR to build sixteen standalone condominiums on Lot 12B, which approval superseded the purported 1995 site plan. The Board also refused to record the Condominium Plat because it considered it to be a "substantial" change to the PUD, even though its own Planning Administrator had originally

31

characterized the change as "insignificant." These unreasonable acts by the Board spawned this litigation and formed the basis of its appeal now. For this reason, we award TCR its reasonable attorney fees on appeal. Costs, as a matter of right, are also awarded to TCR as the prevailing party. I.A.R. 40.

## IV. CONCLUSION

TCR's pending petition for review filed pursuant to LLUPA did not preclude the district court from granting declaratory or injunctive relief to TCR in this case. The district court did not err in refusing to admit the site plan that was attached to the Nemeth Affidavit. Moreover, nothing turned on the "site plan" because the Board had forfeited any reliance on it when the PUD had been twice amended and approved by the Board in advance of its efforts to thwart TCR from constructing its previously approved project. As a result, the district court did not err in concluding that there was no dispute of material fact regarding the Board's denial of TCR's amendment application. Further, the district court did not err in granting TCR's claim for declaratory and injunctive relief. The district court did not err in denying TCR's first motion to enforce, however, the district court erred in denying TCR's second motion to enforce. TCR is entitled to have its Condominium Plat recorded and in a format that would allow it to obtain the necessary building permits.

Regarding the Breach of Contract Claim, the district court erred when it granted summary judgment to the County on TCR's claim that the County breached the Settlement Agreement. We also vacate the district court's decision dismissing TCR's claim for breach of the implied covenant of good faith and fair dealing. TCR's claim of breach of the implied covenant of good faith and fair dealing rises and falls on its Breach of Contract Claim. Given that TCR's Breach of Contract Claim has been reinstated, it follows that its claim for breach of the covenant of good faith and fair dealing should likewise be reinstated. The district court's decision to deny the County its attorney fees below does not need to be addressed because the basis underpinning an award of attorney fees below has been reversed. TCR is awarded its reasonable attorney fees on appeal. We also award costs to TCR, the prevailing party, as a matter of right. I.A.R. 40.

JUSTICES MOELLER and MEYER concur.

ZAHN, J., dissenting in part.

While I agree with much of the majority's analysis, I do not agree that the district court erred in denying the 2022 motion to enforce or in dismissing TCR, LLC's breach of contract claim.

32

The relief that TCR sought in its 2022 motion to enforce was not necessary for the enforcement of a prior order of the district court, but instead was entirely different relief and therefore the district court correctly determined that the relief requested was beyond its limited jurisdiction under Idaho Appellate Rule 13(b)(13). The breach of contract claim claimed a breach of the recitals portion of the Settlement Agreement, which the district court correctly determined did not contain an enforceable promise. I therefore respectfully dissent from sections III.D.2 and III.E of the majority opinion.

## A. The relief sought in the 2022 motion to enforce was not required for the enforcement of the district court's prior order.

TCR challenges the district court's denial of its May 6, 2022, motion to enforce, which requested that the district court:

> [E]nter an order enforcing its previous orders, and specifically directing defendant Teton County to rescind Teton County's April 21, 2022 withdrawal of the building permits approved by Teton County for Plaintiff's Lot 12B, including 1) rescinding Teton County's change of status for building permits issued in December 2021 from "approved" to "denied," and 2) rescinding Teton County's issuance of stop work orders for building permits approved by Teton County in November 2021, all of which relate to TCR's condominium plat for Lot 12B, which was legally recorded pursuant to [the district court]'s prior order.

Prior to TCR filing the 2022 motion to enforce, on January 7, 2022, Teton County had filed a notice of appeal from the district court's final judgment in the case. Because an appeal was pending, the district court lost jurisdiction over the entire action except for those matters identified in Idaho Appellate Rule 13(b). *Bagley v. Thomason*, 155 Idaho 193, 197–98, 307 P.3d 1219, 1223–24 (2013). TCR argued that the district court had authority under Rule 13(b)(13) to grant the motion to enforce. That rule grants the district court the power and authority during the pendency of an appeal to "[t]ake any action or enter any order required for the enforcement of any judgment or order." I.A.R. 13(b)(13). TCR argued that granting the 2022 motion to enforce was necessary and proper to enforce the district court's prior order dated May 28, 2021, and its final judgment dated December 2, 2021.

In reviewing the motion, the district court considered the relief requested by TCR in the litigation and noted that TCR had never requested the particular relief sought in the 2022 motion. Rather, the relief TCR requested was limited to injunctive relief concerning the recordation of the Condominium Plat. The district court found that the County had, by the time of the motion, recorded the Condominium Plat. As a result, the district court concluded that the relief TCR

33

requested in the 2022 motion went beyond the scope of the district court's authority under Rule 13(b)(13). The district court also was not persuaded that the relief sought by TCR was contemplated by the express mandates of its prior orders, which: (1) enjoined the Teton County Board of Commissioners from refusing acceptance of the plat or preventing any further attempt by TCR to record the Condominium Plat and (2) required Teton County to record the plat. The district court concluded that the County's subsequent act of recording the plat constituted an acceptance of the plat. Finally, the district court concluded that the only affirmative conduct required of the County pursuant to the district court's prior orders was the recordation of the Condominium Plat, and that had been accomplished. The district court therefore concluded that imposing any further requirements on the County would exceed the authority granted in Rule 13(b)(13).

The majority concludes that the district court erred in denying the motion because TCR stated in its memorandum in support of a motion for summary judgment that it was attempting "to record the paperwork necessary to develop the approved condominium units" and that Teton County's Code provides that a building permit application shall not be denied unless it fails to comply with the requirements of required codes and county ordinances. In other words, the majority's conclusion rests on the fact that TCR had said it was trying to develop the units and under the County's ordinances it was entitled to the building permits. This may well be true. But that does not mean the district court had continuing authority under Rule 13(b)(13) to issue any relief it deemed necessary to prevent the County from interfering with TCR's construction of the condominium units.

Noticeably absent from the majority's analysis is any connection between the language of the district court's prior orders and how the relief requested by TCR was *required for the enforcement of those prior orders*. The district court's order denying the motion quoted the specific requirements of its prior orders:

> "Accordingly, TCR's Motion for Summary Judgment on Count II of the Complaint is therefore granted and the [district court] will *enjoin the* [*Board of County Commissioners*] *from further refusing acceptance of the Plat and will require its recordation*."

> "For the foregoing reasons, TCR's Motion for Summary Judgment on Count II of their Complaint is GRANTED. Accordingly, for the reasons stated above, the County's Motion for Summary Judgment is DENIED in its entirety. THEREFORE IT IS HEREBY ORDERED, *the County is enjoined from preventing any further attempt by TCR to record its Condominium Plat*."

34

"Count I of Plaintiff's Complaint for Breach of Contract is dismissed with prejudice. Plaintiff is entitled to Declaratory and Injunctive relief *and Teton County is enjoined from preventing any further attempt by TCR to record Plaintiff's Condominium Plat.*"

(First emphasis added; remaining emphasis in original; internal citations omitted.) In its second motion to enforce, TCR was seeking orders that would require the County to reinstate the building permits and rescind its prior stop work orders. The requested orders were not necessary to effectuate the district court's prior orders requiring the County to accept and record the Condominium Plat, but instead sought additional relief based on the County's subsequent refusal to recognize the validity of the recorded Condominium Plat. I believe the result would be different had TCR sought relief directly related to the district court's order, for instance seeking an order enjoining the County from denying the validity of the Condominium Plat. But that is not what occurred here. The relief that TCR sought in the 2022 motion to enforce was new, additional relief that related to events that occurred following the district court's issuance of the orders at issue. As such, the relief requested was not necessary to enforce the original court orders.

Unfortunately, the 2022 motion to enforce may not have been necessary at all had the district court granted TCR's first motion to enforce. While I agree with the majority that TCR should not have to file a new lawsuit at every step of the process because of the County's continued refusal to recognize the validity of the Condominium Plat, I do not believe the 2022 motion would have been necessary had the district court granted the first motion to enforce. Regardless, I would affirm the district court's order denying the 2022 motion to enforce because it sought relief that was not required for enforcement of the district court's prior orders and as such, the district court did not have jurisdiction under Rule 13(b)(13) to grant the requested relief.

**B. The recitals contained in the Settlement Agreement do not constitute enforceable covenants for purposes of TCR's contract claims.**

TCR's Complaint raised two contract claims against the County based on its allegation that the parties to the Settlement Agreement agreed to remove obstacles to the construction of the Teton Creek Resort Project and agreed to forever release any demands or controversies related to the 1995 Planned Unit Development ("PUD") Plat. TCR contends that the County's subsequent refusal to accept and record the Condominium Plat, blacking out of the Board Chair's signature on the Condominium Plat, and its requirement that TCR file another application to amend the PUD Plat violated its promises made in the Settlement Agreement.

35

The district court dismissed the claims after finding that the Settlement Agreement was unambiguous. The district court concluded that the "obstacles" language of the Settlement Agreement was contained in the recitals section of the Agreement and was not a binding provision of the agreement, but instead was considered only if the agreement was ambiguous and the court was attempting to determine the parties' intent behind a certain contractual provision. The district court concluded that the Settlement Agreement unambiguously provided that the Ad Hoc Committee against Teton Creek Resort, the Citizens for Teton Valley, and the Community Association for Responsible Planning (collectively "Activist Groups") were the only parties who agreed to not raise any claim or objection arising from the development of the PUD. Because that provision did not apply to the County, the district court granted summary judgment to the County and dismissed TCR's claims for breach of contract and breach of the implied covenant of good faith and fair dealing related to the Settlement Agreement.

The majority reverses the district court's grant of summary judgment and concludes that the district court erred in limiting its analysis of the contract to whether it was unambiguous: "Here, the district court erred in limiting its analysis of the Agreement to whether the Mutual Releases Provision was ambiguous, instead of considering the entire Settlement Agreement, including the Recitals Provisions." The majority's conclusion flies in the face of our existing contract law and I therefore would affirm the district court's decision granting summary judgment to the County and dismissing TCR's contract claims.

"A settlement agreement is a contract resolving the parties' underlying dispute and stands on the same footing as any other contract and is governed by the same rules and principles as are applicable to contracts generally." *Seward v. Musick Auction, LLC*, 164 Idaho 149, 155, 426 P.3d 1249, 1255 (2018) (internal quotation marks and citation omitted).

> When interpreting a contract, this Court begins with the document's language. *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 308, 160 P.3d 743, 747 (2007). "In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001). Interpreting an unambiguous contract and determining whether there has been a violation of that contract is an issue of law subject to free review. *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 605–06, 38 P.3d 1258, 1261–62 (2002). A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical. *Swanson v. Beco Constr. Co.*, 145 Idaho 59, 62, 175

36

P.3d 748, 751 (2007). Whether a contract is ambiguous is a question of law, but interpreting an ambiguous term is an issue of fact. *Bakker v. Thunder Spring– Wareham, L.L.C.*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005) (quotation omitted).

*Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010).

Recitals are not a part of the contract and are not legally binding. *See Columbia Tr. Co. v. Eikelberger*, 42 Idaho 90, 104, 245 P. 78, 83 (1925) (holding that "the actual provisions of this compromise must govern over any general recitals"). However, if a contract is ambiguous, recitals can be used to determine the intent of parties. *Brooks v. Terteling*, 107 Idaho 262, 264, 688 P.2d 1167, 1169 (1984) ("[W]here there is an ambiguity in the language employed in the operative portion of the contract, we may look to the recitals to determine and construe the intent of the parties as expressed in the entire document.").

I would affirm the district court on the basis that the Settlement Agreement is unambiguous and thus there is no need to consider the recitals in order to interpret the contract and determine the intent of the parties to the agreement. While I agree that the County's actions here had no reasonable basis in fact or law, I do not believe they violated the promises that the County made in the Settlement Agreement:

> 2.0    Mutual Releases, Disclaimer and Cooperation. Effective upon execution of this Agreement, *each party*, *individually and jointly, mutually releases, from the beginning of time to the end of the world, each other party*, their personal representatives, heirs, successors, and assigns, together with their respective owners, members, agents, partners, servants, officers, directors, attorneys, and representatives from any and all claims, actions, causes of action, suits, controversies, demands, covenants, contracts or provisions whatsoever, asserted or unasserted, known or unknown, which that party ever had, or now has, for or by reason of any act, omission, matter, cause, or thing whatsoever, including but not limited to, *all claims which are asserted or could be asserted in, or in any way relate to or arise out of or regarding, the Dispute*. With the exception of claims that may arise from the breach of this Agreement, the Parties do not intend to reserve any claims whatsoever against each other.

> . . . .

> *Ad Hoc, CTV and CARP further agree that they individually or jointly, from the execution of this Agreement until the end of the world*, through any present or future members, officers, directors, employees, associates, or agents *will not raise or cause to be raised, any claim or objection of any manner whatsoever, to the sale, development, zoning, land use plan or any other matter in any way arising from development or attempts to sell and develop the Teton Creek Resort Project at issue*

37

*in, or relating to, arising out of or regarding the Dispute, provided the same are*
*reasonably in accordance with the Recorded Plat, defined at paragraph 7.1.*

(Emphasis added.)

The above language constitutes the promises that the County made in the Settlement Agreement. All the County promised to do was release all claims which were asserted in, or in any way related to or arose out of "the Dispute." The Dispute, in turn, was defined to include three separate pieces of litigation designated as TCR Litigations I, II, and III. TCR Litigation I was TCR's appeal of the Board of County Commissioners' October 12, 1993, decision affirming the Planning and Zoning Commission's decision rescinding its approval of the preliminary plat for the PUD. TCR Litigation II was the Activist Group's appeal of the Board of County Commissioners' June 7, 1995, decision granting approval of the preliminary plat for the PUD. TCR Litigation III was the Activist Group's appeal of the Board of County Commissioners' November 13, 1995, approval of the final plat for the PUD. Notably, all three pieces of litigation related to the 1995 PUD Plat, which did not include a Lot 12B or otherwise approve construction of sixteen standalone condominiums on the lot that was later re-designated as Lot 12B in a subsequent plat amendment that was approved years after the execution of the Settlement Agreement.

At no point has TCR contended that the original 1995 PUD Plat approved the construction of sixteen condominiums on Lot 12B. Nor does the original 1995 PUD Plat reflect as much. As a result, the County could not release any claims related to Lot 12B in the Settlement Agreement because those claims did not yet exist.

The Settlement Agreement is unambiguous as to what the County agreed to release, and its agreement did not extend to the condominiums at issue here. The Settlement Agreement's recitals did not bind the County to any promises and cannot be relied upon now to create additional obligations. Nor can the recitals create additional obligations for purposes of the implied covenant of good faith and fair dealing. "The implied covenant of good faith and fair dealing does not create independent obligations, it merely applies to contractual obligations." *Silicon Int'l Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 552, 314 P.3d 593, 607 (2013). I would therefore affirm the district court's decision because the County did not breach the promise it made in the Settlement Agreement. In the absence of a breach of the contract, there cannot be a breach of the implied covenant of good faith and fair dealing.

For these reasons, I respectfully dissent from sections III.D.2 and III.E of the majority opinion. I fully concur in the remaining portions of the opinion.

JUSTICE BRODY concurs.